IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA AUTUMN SHIANN CREECH, | ) |
| | ) |
| *Petitioner*, | ) |
| | ) |
| v. | ) No. CIV-14-529-JHP |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Respondent*. | ) |

## OPINION AND ORDER

Before the Court is Petitioner Lisa Autumn Shiann Creech's "Amended Motion Under 28 U.S.C. 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody." Petitioner alleges: (1) she received ineffective assistance of counsel, (2) she was convicted of a non-existent offense, and (3) she improperly received an enhancement for possession of a dangerous weapon. The Government has responded, asserting all claims but the ineffective assistance of counsel one are barred by the appellate waiver in Petitioner's written plea agreement. Having considered Petitioner's motion, the Government's response, and the well-developed record, the Court hereby finds that Petitioner's motion is DENIED.[1]

Petitioner, along with her mother, Brenda Toniece Vann (hereafter "Vann"), and Petitioner's boyfriend, Andrew Kelli Braddock (hereafter "Braddock"), was charged with Count One: Conspiracy to Manufacture Methamphetamine, in violation of 18 U.S.C. § 846; Count Two: Manufacture of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; Count Three: Endangering Human Life While Illegally Manufacturing

---

[1] Because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," no evidentiary hearing is necessary. 28 U.S.C. §2255(b). *See also United States v. Barboa*, 777 F.2d 1420, 1422, n. 2 (10th Cir. 1985).

1

Controlled Substances, in violation of 21 U.S.C. § 858 and 18 U.S.C. § 2; and Count Four: Manufacture of Methamphetamine on Premises Where Children are Present or Reside, in violation of 21 U.S.C. §§ 860a and 841(b)(1)(C) and 18 U.S.C. § 2. The charges arose from Petitioner's two-year old daughter being admitted to the emergency room at Hastings Hospital in Tahlequah with a nine-inch by five-inch burn on her upper chest and arm which medical professionals at the hospital identified as a second degree chemical burn.

In the days prior to the child's admission to the hospital, the child had been primarily in Vann's care while Petitioner was away with Braddock. Vann, Petitioner and the child lived in the same residence. Vann identified herself as a long-term drug addict. She admitted manufacturing methamphetamine inside the residence once or twice a week, though she denied "cooking" while her grandchild was in the home. Vann told law enforcement she could not explain how the child had been burned but assumed that some of the methamphetamine chemicals had spilled on the shirt the child had been wearing prior to her putting it on. Similarly, Braddock told law enforcement Petitioner had informed him Vann had "cooked" methamphetamine earlier in the week and had spilled chemicals from the lab on the child's shirt. The child had been wearing the shirt for several days, but apparently did not sustain an injury until she got into the shower wearing the shirt and water hit the shirt, activating the chemicals. Burn marks on the inside of the shirt were consistent with the burns on the child's body.

Vann, Braddock and Petitioner all admitted to law enforcement agents that they were purchasing pseudoephedrine for Vann to use to manufacture methamphetamine. Law enforcement agents corroborated these admissions with records from various pharmacies[2] in the areas surrounding Vann and Petitioner's home. Additionally, various items associated with

---

[2] Because federal law limits the quantity of pseudoephedrine any one individual can purchase in a thirty-day period, pharmacies require photo identification for pseudoephedrine purchases and log those purchases in a database accessible to law enforcement.

methamphetamine manufacturing had been removed from the home and were located in Vann's car.

Petitioner was represented by court appointed counsel Roger Hilfiger from her arraignment through her plea. Petitioner pled guilty pursuant to a written agreement, the relevant terms of which are as follows: Petitioner agreed to plead guilty to Count Four in exchange for the Government's dismissal of Counts One through Three at sentencing. Petitioner agreed to certain relevant facts, namely that on numerous occasions she purchased pseudoephedrine which she provided to her mother (Vann) to use in manufacturing methamphetamine, that she and her two-year old daughter lived with Vann, that she was aware Vann stored the manufacturing chemicals in the home and also manufactured methamphetamine inside the residence, and that despite this knowledge, Petitioner left her daughter in Vann's care at the residence. (*Id.*). Further, Petitioner waived her right to directly appeal her conviction and sentence and her right to collaterally attack her sentence through a 28 U.S.C. § 2255 motion, except for claims of ineffective assistance of counsel which challenge the plea. Finally, the Government agreed to seek a three-level reduction to Petitioner's guideline level based on Petitioner's acceptance of responsibility.

In calculating the relevant guideline for sentencing purposes, the Court held Petitioner accountable for the 107.52 grams of pseudoephedrine she personally purchased. This quantity was converted to its marijuana equivalent (1,075.2 kg) and assigned a base offense level of 32. Six levels were added for the risk of harm to the life of a minor pursuant to U.S.S.G. § 2D1.1(b)(13)(D), and Petitioner was awarded a three-level reduction for her acceptance of responsibility. This resulted in a total offense level of 35. Combined with Petitioner's Category I criminal history, the recommended imprisonment range was 168 - 210 months.

Petitioner was sentenced on Count Four to 168 months of imprisonment followed by a three-year term of supervised release and ordered to pay a $100 assessment. The Government dismissed Counts One through Three. Shortly thereafter, Petitioner's counsel filed an acknowledgment and waiver of appeal rights which Petitioner had signed.

Defendant did not file a direct appeal. However, she has now filed this 28 U.S.C. § 2255 action. First, she raises various claims of ineffective assistance of counsel: namely that she was denied counsel pre-arrest and at her arraignment, that counsel did not advise her when trial was scheduled, that counsel did not advise her of the effect of the appellate waiver, and that counsel did not allow her to review the discovery. Second, she asserts her guilty plea to 21 U.S.C. § 860a was a plea to a "non-existent" offense. Finally, she challenges the sentencing enhancement for creating a substantial risk of harm to a minor. The Government has asserted the preclusive effect of the appellate and post-conviction waiver in Petitioner's written plea agreement.

1.  **Waiver**

The Tenth Circuit applies a three-part test for evaluating whether a defendant has waived her post-conviction rights: "(1) whether the issue appealed or challenged falls within the scope of the text of the waiver; (2) whether the waiver was knowingly and voluntarily entered into; and (3) whether enforcing the waiver would result in a miscarriage of justice." *United States v. Pinson,* 584 F.3d 972, 975 (10th Cir. 2009) (applying the standard for analyzing appellate waivers announced in *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) to waiver of collateral challenges). Whether the waiver was knowing and voluntary depends on whether "the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily" and whether there was an "adequate Federal Rule of Criminal Procedure 11

colloquy." *Hahn,* 359 F.3d at 1325. A miscarriage of justice occurs in only four narrow situations: where the district court relied on an impermissible factor such as race, where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, where the sentence exceeds the statutory maximum, or where the waiver is otherwise unlawful. *Id.* at 1327.

Here, Petitioner's motion falls within the scope of the post-conviction waiver. The waiver explicitly addresses the right "to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on the ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver." Doc. #59 at p. 5. While this language excludes all but Petitioner's claim regarding defense counsel's advice with respect to the appellate waiver in the plea agreement, the Government has advised it is not relying on the waiver as to any claims of ineffective assistance.

The language of the plea agreement itself indicates Petitioner's plea was knowing and voluntary. The waiver provisions are unambiguous and separately signed by Petitioner. Further, she and her counsel both acknowledged that they had reviewed and discussed the terms of the entire written agreement. Moreover, the Magistrate Judge who accepted Petitioner's guilty plea found the plea to be knowing and voluntary. Petitioner was advised of the charges against her, the statutory limitations on punishment, and the likely sentence pursuant to the Guidelines. She acknowledged her understanding of each. Further, Petitioner indicated she understood each of the various rights she was relinquishing by pleading guilty. She responded affirmatively when asked if her plea was the result of her own free will. The Magistrate Judge discussed the factual basis for the plea and the appellate and post-conviction waiver provisions specifically with Petitioner. Again, Petitioner expressed her understanding of each item.

Finally, this is not a situation where enforcing the post-conviction relief waiver would result in a miscarriage of justice. While Petitioner has contested defense counsel's advice in negotiating the post-conviction waiver, her ineffective assistance claims are unsubstantiated by the record. Notwithstanding the waiver, Petitioner's claims fail on the merits.

### 2. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Petitioner must "[f]irst . . . show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Additionally, "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Petitioner must prove both deficiency and prejudice before she is entitled to relief.

Each of Petitioner's ineffective assistance of counsel claims fails. First, with respect to her allegation she was questioned without counsel on February 1, 2013, Petitioner has not provided sufficient information to establish the denial of counsel. Petitioner is only entitled to counsel and warnings about self-incrimination if she was in custody. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). She has not provided facts to establish custody. As to her second and third contentions, the minute sheet from Petitioner's arraignment confirms Roger Hilfiger was appointed to represent her and the May 7, 2013 trial date was announced in open court. Similarly, Petitioner's contention that Mr. Hilfiger did not explain the appellate waiver is disproven by the record. The appellate waiver was explicitly stated in the written plea agreement. Petitioner initialed each page of that document, separately signed the waiver

provisions, and signed the end of the agreement following a paragraph advising she had read the document in its entirety and had discussed the terms of the agreement with her attorney. Mr. Hilfiger signed a similar acknowledgment. Moreover, as previously discussed, Petitioner's responses during the plea colloquy indicate her plea was knowing and voluntary. The Magistrate specifically asked her about her understanding of the appellate waiver. Accordingly, the foregoing claims are denied because the record contradicts Petitioner's claims of deficiency.

The Court notes Petitioner's remaining claim – that Mr. Hilfiger refused her request to review the discovery – was not part of Petitioner's original motion (which the Court struck because Petitioner had not signed it). This claim was included in Petitioner's amended motion, filed after Petitioner's mother, Vann, made a similar claim that her court-appointed attorney had withheld discovery in her case. Notably, Petitioner did not mention counsel's denial of the discovery at the plea hearing when the Court asked if she was satisfied with Mr. Hilfiger's services. Nonetheless, the Court need not hold a hearing or further inquire into whether Mr. Hilfiger did or did not review the discovery with Petitioner. Even if he did not, Petitioner has not explained how she was harmed by not reviewing the information. Specifically, she has not indicated that had she reviewed the discovery she would have foregone her guilty plea in favor of a trial. Therefore, she cannot establish prejudice. *See United States v. Weeks*, 653 F.3d 1188, 1201 (10th Cir. 2011). Her ineffective assistance of counsel claim as to the discovery issue is, therefore, denied. *Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) (A court may "affirm the denial of habeas relief on whichever *Strickland* prong is easier to resolve.")

   3.   **The "Non-Existent Offense"**

Petitioner challenges her conviction on Count Four, manufacturing methamphetamine on premises where children are present or reside, in violation of 21 U.S.C. § 860a, 21 U.S.C.

7

§ 841(b)(1)(C), and 18 U.S.C. § 2. She argues this is a non-existent offense because "the complaint cit[es] no more than the language of the statue (sic)" and "the subsection is missing to identify the crime." Motion at 4-5. Presumably, she is arguing that she had to be the individual manufacturing the methamphetamine to sustain her conviction. She emphasizes that no chemicals were found in her possession and she was not present when her daughter's injury occurred. Motion at 5.

Defendant misunderstands her culpability. As an aider and abettor, she "need not perform the underlying criminal act, be present when it is performed or be aware of the details of its commission to be guilty." Tenth Circuit Pattern Jury Instruction 2.06. Petitioner during the plea colloquy and in the factual basis portion of her written plea agreement admitted all the Government would have needed to prove at trial – that Vann manufactured methamphetamine in a home where a child resided and that Petitioner knew of Vann's criminal act and intended to help her. Indeed, Petitioner admitted providing her mother pseudoephedrine specifically for the purpose of manufacturing methamphetamine. Petitioner further stated she knew her mother cooked in the residence where Petitioner and her daughter lived. Furthermore, she left the child with Vann at the residence despite her knowledge that Vann stored the manufacturing chemicals inside the home. Petitioner was properly convicted of manufacturing methamphetamine on premises where children are present or reside.

### 4. The Sentencing Enhancement

Petitioner improperly states her sentence was enhanced pursuant to 21 U.S.C. § 841(b)(1)(C) for possession of a dangerous weapon. Motion at 5. The Government in its response has liberally construed Petitioner's argument as a challenge to the six-level increase pursuant to U.S.S.G. § 2D1.1(b)(13)(D) for creating a substantial risk of harm to the life of a

minor. The Court also concludes this is the enhancement Petitioner truly intended to contest. Petitioner supports her contention of the enhancement by noting that Vann took responsibility for the chemicals found in Vann's vehicle and that Petitioner was unaware if chemicals were actually found on the child's shirt. However, Petitioner misunderstands the burden of proof necessary to sustain the sentencing enhancement. The Government does not have to prove that the child's burn was actually caused by the chemicals used in the methamphetamine manufacturing process. Rather, the Government need only prove by a preponderance of the evidence that Petitioner's conduct created a substantial risk of harm to the child. Application Note 18 to U.S.S.G. § 2D1.1 is instructive on this point. In determining whether a substantial risk has been created, the Court shall consider the following factors:

> (I) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.
>
> (II) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.
>
> (III) The duration of the offense, and the extent of the manufacturing operation.
>
> (IV) The location of the laboratory (e.g., whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm.

Vann "cooked" methamphetamine once or twice a week in the same residence where Petitioner and her child resided. Vann denied manufacturing while her granddaughter was in the house but admitted storing the chemicals inside the residence. After the child sustained the burn and child welfare was called, Vann removed the chemicals from the home and placed them in her vehicle from which they were later seized pursuant to a search warrant. Petitioner knew her mother manufactured methamphetamine inside their residence. For more than two years,

9

Petitioner regularly obtained pseudoephedrine and provided it to Vann specifically for the purpose of manufacturing methamphetamine. Again, Petitioner knew Vann stored the chemicals for manufacturing inside the home, but left her daughter in the home anyway.

Manufacturing methamphetamine is an inherently dangerous process. Legislative reports on the Methamphetamine and Anti-Club Proliferation Act of 2000 describe the process as "unstable, volatile and highly combustible" and producing "toxic and often lethal waste products." H.R. Rep. 106-878 at 22 (Sept. 21, 2000). The Tenth Circuit has affirmed the substantial risk of harm to a minor enhancement in circumstances where a child is injured during the actual manufacturing process or is inside the home at the same time methamphetamine is being manufactured. *See United States v. French*, 296 Fed. Appx. 716, 722 (10th Cir. 2008) *United States v. Bell*, 445 Fed. Appx. 69, 72 (10th Cir. 2011) and *United States v. Salazar*, 88 Fed. Appx. 332, 334 (10th Cir. 2004). The six-level enhancement for creating a substantial risk of harm to the life of a child was supported by the evidence and properly applied to Petitioner at sentencing.

Petitioner's motion to vacate is hereby **DENIED.**

**IT IS SO ORDERED** this 14th day of April, 2015.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma

10